IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALVIN REAVES, #312825         *
            Plaintiff,

    v.           *  CIVIL ACTION NO. WDQ-06-2543

CORRECTIONAL MEDICAL SERVICES,  *
  INC.
          Defendant.  *
                ***

## MEMORANDUM

### *Procedural History*

Plaintiff's letter, received by the Court on September 28, 2006, was construed as a 42 U.S.C. § 1983 civil rights complaint for emergency relief. The matter is relatively straightforward. Plaintiff complains that he was assaulted by correctional officers at the Jessup Correctional Institution ("JCI") on September 5, 2006, and suffered serious injuries to his head and hand and to the right side of his ribs and chest.[1]  He claims that he lost consciousness, was urinating blood, and has had mobility problems with his right hand.  Plaintiff alleges that in spite of his serious injuries, he was never taken to an outside hospital, seen by a doctor, or provided an x-ray.  He seeks medical care for his alleged injuries.

On October 11, 2006, the Court directed counsel for Correctional Medical Services, Inc. ("CMS") to show cause why Plaintiff's request for injunctive relief should not be granted.   The response, received on November 1, 2006, was construed as a motion for summary judgment and Plaintiff was granted additional time to file an opposition.  As of the within signature date no response has been filed.  The case may be determined without oral hearing. *See* Local Rule 105.6.

---

[1]   Plaintiff is now confined at the Maryland Correctional Adjustment Center.

(D. Md. 2004).  For reasons to follow, summary judgment shall be granted[2] and the complaint for injunctive relief shall be dismissed.

*Standard of Review*

Where, as here, an inmate is seeking injunctive relief in conjunction with his Eighth Amendment claim, relief may only be granted if the inmate can demonstrate: (1) the likelihood he will be irreparably harmed if emergency relief is denied; (2i) the likelihood that defendant will not be harmed if the requested relief is granted; (3) the likelihood that the inmate will succeed on the merits; and (4) the public interest will be served if the injunction is granted. *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977).

Further, an inmate presenting an Eighth Amendment claim alleging denial of medical care must prove two essential elements.  First, he must satisfy the "objective" component by illustrating a serious medical condition.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  If this first element is satisfied, the inmate must then prove the subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference"

_____

[2]   It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex*, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

*Analysis*

The following information is adduced from the exhibit evidence presented to the Court. Plaintiff came to the dispensary at JCI on the morning of September 5, 2006, complaining that he had been hit by someone. Paper No. 3, Exs. A & B. He did not complain that he had lost consciousness, but voiced complaints of injuries to his face and back. Nurse Minty Tilahun examined Plaintiff and noted multiple bruises over his face, forehead, and orbital area. *Id*. In addition, his lips and ears were edematous (swollen) with bruises and there was a mild hematoma in his temporal area. *Id*. Plaintiff had a small cut, about two to three centimeters in length, under his chin and a superficial round-shaped cut on his right upper arm. *Id*. Nurse Tilahun applied antibiotic dressings to the cuts on Plaintiff's chin and arm and gave him Motrin for headache. *Id*.

Plaintiff was transferred to the Maryland Correctional Adjustment Center that same day and was evaluated by Nurse Kathryn Atkins that evening. Plaintiff complained that he had urine in his blood and that it burned when he urinated, which he attributed to being kicked in the side during the JCI altercation. *Id*. Nurse Atkins tested Plaintiff's urine for occult blood. The test showed a +1 to

+2 blood reading, indicating a small to moderate level of occult blood in the urine.  Paper No. 3, Ex. A & B.  Nurse Atkins obtained a urine specimen to send to the laboratory for analysis and referred Plaintiff to the physician.  *Id*., Ex. A.

Plaintiff submitted two sick-call requests, dated September 6, 2006, in which he complained of stiffness of his right hand and pain in his rib and chest when he laid on his right side. *Id*. Nearly a week later on September 12, 2006, Nurse Donna Riley evaluated Plaintiff for his complaints of pain in his ribs and chest and of stiffness in his right hand.  *Id*., Exs. A & B.  Nurse Riley noted old bruises on Plaintiff's face and around his eyes, and that his eyes were bloodshot.  Her examination showed that Plaintiff's respirations were even and non-labored with no shortness of breath.  *Id*. According to the record, Plaintiff refused to allow Nurse Riley to take his vital signs and left the dispensary after being provided Tylenol for pain and discomfort.  *Id*.

Plaintiff was again examined by Nurse Clementina Adediji on September 19, 2006, who noted that he: (1) was able to move his fingers; (2) had no cough or difficulty breathing, and (3) complained of pain from the side. *Id*.  Nurse Adediji referred Plaintiff to the physician for further evaluation. *Id*.

Plaintiff submitted two additional sick-call requests, dated September 22, 2006.  *Id*.  He complained of: (1) pain and redness in the left eye; (2) redness in the right eye, but less pain in the left eye; and (3) pain in his ribs and chest when he laid on his side.  *Id*.   In the sick-call requests, Plaintiff indicated that he had been passing blood in his urine, but that this had stopped "a week and four days ago." *Id*.   Defendant states that the forms were received on September 25, 2006, and Plaintiff was examined by Nurse Adediji on October 3, 2006.  Nurse Adediji's examination showed that Plaintiff's vital signs were within normal limits and he had no cough, fever, or difficulty

breathing.  *Id*.  Nurse Adediji noted that Plaintiff had not been brought up to the dispensary the last time he was scheduled to see the physician and she again referred him to the chronic care clinic. Paper No. 3, Exs. A & B.

Plaintiff submitted another sick-call form on October 2, 2006, complaining of pain in his right ribs and chest and he submitted two more sick-call forms on October 9, 2006, complaining of pain in his left ear and lower back.  *Id*.  On October 9, 2006, Dr. Cherelle Reddick-Lane examined Plaintiff for his complaints of residual right-sided chest and right hand pain and his complaint that his hand intermittently "goes dead."  *Id*.  Dr. Reddick-Lane noted that Plaintiff's right hand was not tender or swollen and assessed his problems as soft-tissue injuries resulting from the altercation. *Id*.  She reassured Plaintiff and ordered x-rays of his right hand and chest wall.  *Id*.  On October 27, 2006, x-rays were taken of Plaintiff's chest, ribs, and right hand.  *Id*.  The results were negative.  *Id*.

The Court makes the following observations.  Over the course of a four-week period after the September 5, 2006 incident, Plaintiff was examined several times by nurses in response to his sick-call requests.   The nurses evaluated his injuries, dressed his wounds, took his vital signs, and provided Motrin and Tylenol for pain and discomfort.  At all times Plaintiff's vital signs and breathing were found to be normal.  Plaintiff did test positive for small to moderate levels of occult blood in his urine soon after the incident, but his own sick-call encounter complaints  acknowledge that the problem had resolved itself within seven to ten days.  Plaintiff was finally seen by a physician approximately five weeks after the original September 5, 2006 incident.  The examination proved unremarkable and x-rays of the chest, ribs, and right hand were negative.  While the Court trusts that the medical referral process encountered by Plaintiff is not emblematic of routine policy

and procedure for review and treatment of Division of Correction inmates in like circumstances,[3]

it finds that Plaintiff has failed to refute the record before this Court in order to establish a claim of

Eighth Amendment deliberate indifference on the part of medical personnel.[4]

*Conclusion*

For the aforementioned reasons, Defendant's Motion for Summary Judgment is hereby

granted.  Judgment is entered in favor of Defendant and against Plaintiff.  A separate Order follows.


Date: <u>November 30, 2006</u>                         <u>            /s/            </u>
                                                                    William D. Quarles, Jr.
                                                                    United States District Judge

---

[3]    Plaintiff was referred to a physician on September 5,  September 19, and October 3, 2006. The first referral occurred after a small to moderate amount of blood were found in his urine.  A urine sample was obtained, but it is not clear if the specimen was sent out for testing and, if so, what results were found. Plaintiff was apparently scheduled to see a physician on September 13, 2006, but this appointment did not occur.  The second and third referrals occurred after Plaintiff complained of pain in his eyes, ribs, and hand. He did not see a physician until October 9, 2006.

[4]    Immediately after the filing of this Complaint Plaintiff was examined by a physician, who ordered x-rays.  The examination was normal and the x-rays proved negative. The undersigned therefore concludes that injunctive relief is not warranted.